# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| TWIN VILLAGE MANAGEMENT, LLC; DAVID MATTHEW STANLEY; STEVE STANLEY; WCP GROUP GP, LLC; HUNTINGTON CREEK  CAPITAL IV, LLC; HUNTINGTON CREEK CAPITAL VI, LLC; and HUNTINGTON CREEK CAPITAL VII, LLC, | § § § § § § § | |
| *Plaintiffs* | § § | **Case No. 1:22-CV-01111-ADA** |
| **v.** | § § | |
| FEDERAL INSURANCE COMPANY CHUBB GROUP OF INSURANCE COMPANIES; CHUBB INDEMNITY INSURANCE COMPANY; CHUBB NATIONAL INSURANCE COMPANY; ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC.; and ARTHUR J. GALLAGHER & CO., | § § § § § § § § § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:     THE HONORABLE ALAN ALBRIGHT**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Arthur J. Gallagher & Co.'s Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(6) and 9(b) (Dkt. 5) and Arthur J. Gallagher Risk Management Services, Inc.'s Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(6) and 9(b) (Dkt. 6), both filed November 29, 2022; Federal Insurance Company's and Chubb Defendants' Motion to Dismiss Plaintiffs' Original Complaint, filed December 23, 2022 (Dkt. 13); and the associated response and reply briefs.[1]

---

[1] The District Court referred the Motions and related filings to this Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas. Dkts. 11, 15.

## I.    Background

TVM Management, LLC ("TVM"), an Austin, Texas-based company that manages memory care facilities, brings this duty to defend and indemnify suit against its insurer, Federal Insurance Company ("Federal"), an Indiana company.

### A.  Parties

Plaintiffs WCP Group GC, LLC ("WCP"), Huntington Creek Capital IV, LLC, Huntington Creek Capital VI, LLC, and Huntington Creek Capital VII, LLC ("HCC VII") are affiliates of Plaintiff TVM. Plaintiffs David Matthew Stanley and Steve Stanley (the "Stanleys") allegedly control all these companies. Dkt. 13 at 3.

Defendant Federal is a subsidiary of Chubb Group of Insurance Companies ("Chubb Group"). Dkt. 1 at 3-4. Defendants Chubb Indemnity Insurance Company ("Chubb Indemnity") and Chubb National Insurance Company ("Chubb National") also are subsidiaries of Chubb Group. Collectively, the Court refers to the Chubb entities as "Chubb."

Defendants Arthur J. Gallagher Risk Management Services, Inc. and Arthur J. Gallagher & Co. (collectively, "Gallagher") allegedly brokered the insurance.

### B.  Procedural History

Plaintiffs allege that Gallagher presented to TVM a professional liability insurance proposal offering "Executive Package" coverage though Federal. Complaint (Dkt. 1), ¶ 3. Federal issued the policy for the period September 15, 2018 to September 15, 2019. Policy No. 8243-7109, Dkt. 13-8. The Directors & Officers liability provision of the Policy covers "Insured Persons," with a $2 million limit of liability. *Id.* at 27-28. The Policy also provides Securityholder Derivative Demand coverage of $500,000. *Id.* at 7.

In 2019, shareholders of TVM, WCP, and GCC filed several derivative lawsuits in Texas state court against Plaintiffs, alleging breach of fiduciary duty, fraud, and negligence. Dkts. 13-1-13-4. TVM alleges that it notified Federal and Chubb of the underlying suits and requested a defense.

Mathew Dewey, a claim examiner with Chubb NA Financial Lines Claims, told TVM that "Chubb will provide a defense subject to the Policy terms and conditions." Dkt. 13-6 at 2. Dewey stated, however, that coverage was unavailable for WCP and HCC VII because they "are not Insureds under the Policy." *Id.* at 3. "Consequently, we will need to determine a proper allocation for Defense Costs." *Id.*

On March 21, 2021, counsel for Federal and Chubb sent TVM a supplemental coverage letter proposing that Federal would provide a "one-third allocation toward covered Defense Costs" based on these findings:

(1) WCP Fund is not an Insured, so none of its defense costs or loss can be allocated to the Policy;

(2) the allegations against the Stanleys implicate their actions in their capacities as executives solely for WCP Fund, so these claims and the Stanleys' defense costs are not covered by the Policy; and

(3) a duty to defend may be triggered for TVM, which would be entitled to 100% of its Defense Costs under the Allocation Provision of the Policy.

Dkt. 13-7 at 3. Plaintiffs did not respond to the proposed allocation.

Plaintiffs sued Federal, Chubb, and Gallagher, alleging the following claims:

- breach of the duty of good faith and fair dealing; fraud and fraudulent inducement, in violation of the Texas Deceptive Trade Practices Act ("DTPA"); violation of Texas Insurance Code Chapter 541; and unjust enrichment, against all Defendants;

- breach of contract; business disparagement, tortious interference with existing and prospective business relationships, and loss of existing and prospective business relationships; and violation of Chapter 542 of the Texas Insurance Code, against Federal and Chubb; and

- negligence, against Gallagher.

Dkt. 1 at ¶¶ 11-24. Plaintiffs seek $1.5 million in damages, attorneys' fees, costs, and expenses.

## II.    Legal Standard

Defendants move to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010). But the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.*

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). "When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those

documents." *Id.* But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

When federal jurisdiction is based on diversity of citizenship, as in this case, federal courts look to the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). Texas law governs this diversity action.

"Insurance policies are interpreted under the rules of construction that apply to contracts in general. The primary goal of contract construction is to effectuate the parties' intent as expressed in the contract." *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 198-99 (Tex. 2022). The eight-corners rule directs courts to determine a liability insurer's duty to defend its insured based on (1) the pleadings against the insured and (2) the terms of the insurance policy. *Id.* Courts first look to "the language of the policy because [courts] presume parties intend what the words of their contract say." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's, London*, 327 S.W.3d 118, 126 (Tex. 2010). "The policy's words  are given their ordinary and generally accepted meaning unless the policy shows the words were meant in a technical or different sense." *Id.*

In a coverage dispute, the insured has the burden first to prove that their loss falls within the terms of the contract. *Buchholz v. Crestbrook Ins. Co.*, 65 F.4th 766, 769 (5th Cir. 2023). "Once the insured demonstrates this, the burden shifts to the insurer, who, to avoid liability, must show that the loss falls into an exclusion to the policy's coverage." *Id.*; *see also* TEX. INS. CODE § 554.002. "Finally, if the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage." *Buchholz*, 65 F.4th at 769.

### III.      Federal and Chubb's Motion to Dismiss

Federal and Chubb argue that Plaintiffs state no plausible claim for relief under Rule 12(b)(6). Plaintiffs fail to respond to most of Defendants' arguments for dismissal, instead merely reciting the elements of their claims and reasserting the conclusory allegations in their Complaint. Dkt. 14. This cannot defeat a motion to dismiss under Rule 12(b)(6). *See Twombly*, 550 U.S. at 555 (stating that a plaintiff must defend a Rule 12(b)(6) motion to dismiss  by providing the "grounds" of his "entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action").

Plaintiffs' claims against Federal and Chubb also fail for the following reasons.

### A.  Breach of Contract

To state a claim for breach of contract against Federal and Chubb, Plaintiffs must allege: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

Plaintiffs allege that Federal and Chubb breached the Policy by failing to defend and indemnify Plaintiffs in the underlying suits as required under the Policy. Dkt. 1 ¶ 22. Plaintiffs do not allege sufficient facts showing that Federal and Chubb breached the Policy to state a breach of contract claim.

#### 1.  Federal

As stated, Federal agreed to defend and indemnify TVM in the underlying suits "subject to its ongoing investigation and a full reservation of rights." Dkt. 13-7 at 3. Federal also determined that "HCC VII and WCP Fund are not **Insureds**, and thus any underlying claims against those entities, or against the Stanleys acting in their capacity on behalf of those non-insured entities, are not covered under the Policy." Dkt. 13 at 9.

Plaintiffs make the conclusory argument that Federal breached the Policy by failing to defend and indemnify Plaintiffs "in that the scope of the allegation in the four corners of the pleadings and claims (the Underlying Suits) fall within the four corners of the insuring document (the Policy)." Dkt. 14 at 12. But Plaintiffs do not allege *how* Federal breached the Policy. Their pleadings lack any analysis of the Policy provisions, the applicability of the Policy to the claims in the underlying suits, or how WCP, HCC, or the Stanleys are "Insureds" under the Policy. Conclusory assertions "do not qualify as well-pled factual allegations." *Armstrong v. Ashley*, 60 F.4th 262, 270 (5th Cir. 2023).

The terms of the Policy support Federal's coverage determinations. The Insuring Clauses state:

### Insuring Clause (A): Individual Non-Indemnified Liability Coverage

(A) The Company shall pay, on behalf of an **Insured Person**, **Loss** on account of a **Claim** first made against the **Insured Person** during the **Policy Period**, or the Extended Reporting Period if applicable, to the extent that such Loss is not indemnified by an **Organization**.

### Insuring Clause (B): Individual Indemnified Liability Coverage

(B) The Company shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against an Insured Person during the **Policy Period**, or the Extended Reporting Period if applicable, to the extent the **Organization** indemnifies the **Insured Person** for such **Loss** as permitted or required by law.

### Insuring Clause (C): Entity Liability Coverage

(C) The Company shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against the **Organization** during the **Policy Period**, or the Extended Reporting Period if applicable.

Dkt. 13-8 at 28. The Policy defines "Insured" as "any **Organization** and any **Insured Person**." *Id.* at 30. "Organization" is defined as the "Parent Organization and any Subsidiary." *Id.* at 11. "Insured Person" is defined as "any **Executive** or **Employee** of an **Organization** acting either in

his or her capacity as such." *Id.* at 30. The Policy lists "Twin Village Management, LLC" as the Parent Organization. *Id.* at 9. WCP is not listed as a Parent Organization.

The Policy's unambiguous terms preclude coverage for WCP and the Stanleys acting for WCP. "If the policy does not cover the insured's loss, the insurer does not breach the policy by failing to pay benefits for that loss because the insured is not entitled to those benefits." *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 494 (Tex. 2018). Because Plaintiffs do not show that their claims are covered under the Policy, their breach of contract claim against Federal fails. *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 460 (5th Cir. 2022).

### 2.  Chubb

Under Texas law, "a party generally must be a party to a contract before it can be held liable for a breach of the contract." *Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016). While there are exceptions to this general rule,[2] the party seeking to hold a non-party liable for breach of contract has the burden to prove that the non-party obligated itself under the contract. *Mayers v. Addison Brown, LLC*, No. 3:19-CV-3043-S, 2020 WL 7646973, at *2 (N.D. Tex. Dec. 22, 2020); *Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256, 262 (N.D. Tex. 2014).

As stated, Chubb Group is the parent company of Federal, and Chubb Indemnity and Chubb National are subsidiaries of Chubb Group. Dkt. 1 at 4. Although Chubb sent coverage letters to TVM, Federal – not Chubb – signed the Policy and was the only "Insuring Company" named. Dkt. 13-8 at 5-6 (stating that "Federal Insurance Company" is the "Insuring Company"), 10 (showing "Federal Insurance Company" as the sole signatory). None of the Chubb entities were signatories or parties to the Policy.

---

[2] Under "traditional principles" of state law, contracts may be enforced by or against non-parties to the contract through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver, and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009).

Plaintiffs do not dispute that only Federal signed and "issued" the Policy to TVM,[3] but argue that Chubb breached the Policy by failing to defend and indemnify Plaintiffs. Dkt. 14 at 12. Plaintiffs seek to hold Chubb Group liable for Federal's alleged breach because "Federal is a member of the Chubb Group of Companies." *Id.* at 9.

"It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted). Plaintiffs assert that Federal and Chubb "acted in concert to deprive Plaintiffs' of defense and indemnity," Dkt. 14 at 10, 12, but neither identify an exception to the privity of contract requirement nor advance any legal theory that would bind Chubb Group to the Policy. Plaintiffs have not met their burden to show that non-signatories Chubb Group, Chubb Indemnity, or Chubb National are bound by the Policy. *See Mayers*, 2020 WL 7646973, at *3 (dismissing breach of contract claim against non-signatory where plaintiff did not identify an exception to the privity of contract requirement or adequately advance a recognized theory that would bind non-signatory to the contract); *Weatherford Int'l, LLC v. Binstock*, 452 F. Supp. 3d 561, 575 (S.D. Tex. 2020) (dismissing breach of contract claim against corporation's non-signatory affiliates when plaintiff offered no theory such as alter-ego to hold affiliates liable); *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 930 F. Supp. 2d 653, 667 (W.D. Tex. 2013) (dismissing breach of contract claim against parent company when plaintiff presented no plausible legal theory under which it could be held liable for the legal obligations of its subsidiary that signed the insurance policy).

Therefore, Court recommends that Plaintiffs' breach of contract claim against Chubb should be dismissed.

---

[3] Dkt. 14 at 4.

### B.  Breach of Duty of Good Faith and Fair Dealing

Plaintiffs allege that Defendants breached their "duty of good faith and fair dealing that required Defendants to perform their duties and obligations under . . . the Policy . . . including by failing or refusing to defend and indemnify Plaintiff" Dkt. 1 ¶ 24. Under Texas law, an insurer has a duty to deal fairly and in good faith with an insured in processing claims. *Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 148 (Tex. 2022). A plaintiff states a cause of action for breach of this duty when the plaintiff alleges that "there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay." *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). As a general rule, there can be no claim for bad faith "when an insurer has promptly denied a claim that is in fact not covered." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995).

Plaintiffs do not show that Chubb or Federal breached the Policy. *See Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 254 (Tex. 2009) (affirming dismissal of extra-contractual claims where plaintiff failed to show that insurer breached insurance contract); *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (finding that plaintiff's common law bad-faith claims were "negated by the determination in the breach of contract claim that there was no coverage").

The Texas Supreme court has "left open the possibility that an insurer's denial of a claim it was not obliged to pay might nevertheless be in bad faith if its conduct was extreme and produced damages unrelated to and independent of the policy claim." *Boyd*, 177 S.W.3d at 922. But Plaintiffs have made no such allegation. Plaintiffs allege only that Defendants improperly denied their claim. They do not allege that they suffered any damages "unrelated to and independent of the policy claim." *Id.* Accordingly, Plaintiffs do not state a plausible claim against Federal and Chubb for common law breach of the duty of good faith and fair dealing.

### C.  Statutory Bad Faith

Plaintiffs also allege that Federal and Chubb made material misrepresentations to them as to the terms of the Policy and violated their duty of good faith and fair dealing to abide by the terms of the Policy in violation of the DTPA, Texas Business & Commerce Code Section 17.46, and Texas Insurance Code Sections 541.051 and 541.060. Because the common law bad-faith standard is the same as the statutory standard, Plaintiffs' statutory bad-faith claims under Section 541 of the Texas Insurance Code and Section 17.46 of the DTPA likewise must fail. *See Boyd*, 177 S.W.3d at 921 (affirming dismissal of plaintiff's DTPA and Texas Insurance Code claims where common law bad-faith claim failed); *see also Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 870 (5th Cir. 2014) (affirming dismissal of plaintiff's DTPA claim where plaintiff's common law bad-faith claim failed); *Menchaca*, 545 S.W.3d at 500 ("An insured cannot recover *any* damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits."); *JAW the Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 599 (Tex. 2015) ("We agree with the court of appeals that the policy did not cover the insured's losses and thus the insured cannot recover for the insurer's bad faith failure to effectuate a prompt and fair settlement of the claim.").

If Plaintiffs contend that Federal and Chubb misrepresented the Policy in violation of the Texas Insurance Code and DTPA, they do not allege sufficient facts to state a violation. The  Complaint merely recites the statutory provisions and alleges that Defendants "knowingly and materially misrepresented the provisions of the *Insurance Proposal* and the *Policy* in an attempt to deceive Plaintiff." Dkt. 1 ¶ 21. These conclusory allegations do not "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002).

In their Response, Plaintiffs argue that Defendants misrepresented the Policy by stating that "several business entities named in the Underlying Suits are either not insured or are not insured in their individual capacities." Dkt. 14 at 16. Plaintiffs contend that "[t]his is not the defense or indemnity that Plaintiffs requested or bargained for, and constitutes deception and a misrepresentation of the Policy." *Id.* As stated above, because Plaintiffs do not show that they all were covered Insureds under the Policy, they do not show that Defendants made any material misrepresentations about the Policy. Plaintiffs do not state a plausible claim for relief. *See Mt. Hebron Missionary Baptist Church v. Scottsdale Ins. Co.*, No. 4:17-CV-3164, 2018 WL 8755785, at *5 (S.D. Tex. 2018) (dismissing misrepresentation claims where allegations "merely parrot" the statutes and do not show that representations were misleading); *SHS Inv. v. Nationwide Mut. Ins. Co.*, 798 F. Supp. 2d 811, 821 (S.D. Tex. 2011) (dismissing claims that were "largely composed of legal conclusions couched as factual allegations, formulaic recitations of the elements of a cause of action, generic paraphrases of statutory language, and conclusory statements without supporting facts").

### D.  Prompt Payment

Next, Plaintiffs allege that Federal and Chubb violated Texas' Prompt-Payment statute, TEX. INS. CODE § 542.058, by delaying payment of their claims. To prevail on a claim under this statute, a plaintiff must establish: (1) the amount for which the defendant is contractually liable under the insurance policy; (2) that the defendant violated statutory deadlines; and (3) statutory damages based on the amount contractually owed less the amounts paid within the statutory deadline. *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 658-59 (Tex. 2021). Plaintiffs do not state a plausible prompt payment claim because there can be no liability under the Prompt Payment Act if "the insurance claim is not covered by the policy." *Boyd*, 177 S.W.3d at 922 (dismissing prompt payment claim where plaintiff failed to show that insurance claim was covered under policy); *see*

*also Thomas v. State Farm Lloyds,* 218 F. Supp. 3d 506, 517 (N.D. Tex. 2016) ("Defendants were

not liable for Plaintiffs' claim under the Policy so they cannot be held liable under Chapter 542.").

### E.  Fraud and Fraudulent Inducement

A complaint alleging fraud must satisfy the heightened pleading standard of Rule 9(b), which

provides: "In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake." The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff

pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state

when and where the statements were made, and explain why the statements were fraudulent."

*Herrmann*, 302 F.3d at 564-65. Rule 9(b)

> demands the who, what, when, and where [to] be laid out *before*
> access to the discovery process is granted. . . . Simple allegations
> that defendants possess fraudulent intent will not satisfy Rule 9(b).
> Rather, to proceed to discovery, plaintiffs must set forth *specific*
> *facts* supporting an inference of fraud.

*Elson v. Black*, 56 F.4th 1002, 1009 (5th Cir. 2023).

To establish fraud, a plaintiff must prove that (1) the defendant made a material representation

that was false; (2) the defendant knew the representation was false or made it recklessly as a

positive assertion without any knowledge of its truth; (3) the defendant intended to induce the

plaintiff to act on the representation; and (4) the plaintiff actually and justifiably relied on the

representation and suffered injury as a result. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P.*,

546 S.W.3d 648, 653 (Tex. 2018). Fraudulent inducement "is a distinct category of common-law

fraud that shares the same elements but involves a promise of future performance made with no

intention of performing at the time it was made." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d

143, 153 (Tex. 2015).

Plaintiffs allege that Federal and Chubb committed fraud by representing that they would

perform "pursuant to the defense and indemnification provisions of the *Policy*, and abide by the

terms, conditions, representations, warranties, and duties in the *Policy*, and failed or refused to do so." Dkt. 1 ¶ 28. Plaintiffs also allege that Defendants fraudulently induced them to enter into the Policy by misrepresenting its terms, promising to provide Plaintiffs with a defense and indemnification and failing to abide by those provisions of the Policy. *Id.* ¶ 35.

The gist of Plaintiffs' fraud claims is that Defendants misrepresented the Policy to them by stating that it did not cover their claims. As explained above, Plaintiffs do not show that Defendants wrongly denied their claims or that their claims are covered under the Policy. Plaintiffs do not show that Defendants made a material misrepresentation that was false. *See Grohman v. Kahlig*, 318 S.W.3d 882, 888-89 (Tex. 2010) (affirming dismissal of fraud claim based on defendant's misrepresentation that he would refrain from converting his business types where the agreement did not prohibit such conversion); *Thomas*, 218 F. Supp. 3d at 519 (rejecting plaintiff's fraud claims where policy did not cover insurance claim so defendant "did not make a misrepresentation, material or otherwise, to Plaintiffs about the Policy and its coverage").

Plaintiffs' fraud allegations also do not meet the heightened pleading requirements of Rule 9(b). To plead fraud, a plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010). Plaintiffs meet none of these elements.

**F.   Business Disparagement, Tortious Interference, and Loss of Business Relationships**

Plaintiffs allege that Federal and Chubb's failure to provide "coverage for all or a portion of the defense and indemnity to which Plaintiff is entitled" disparaged Plaintiffs' business reputation and tortiously interfered with their existing and prospective business relationships. Dkt. 14 at 14-15. These claims fail because Plaintiffs do not show that their claims are covered under the Policy. Also, Plaintiffs allege no facts showing that Federal and Chubb's actions were tortious or unlawful.

*See El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421 (Tex. 2017) ("Tortious interference with a prospective business relationship requires a finding that the defendant engaged in independently tortious or unlawful conduct."); *In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015) ("To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice."); *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) ("[T]he elements of tortious interference with an existing contract as: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract.").

### G.  Unjust Enrichment

Plaintiffs allege that Federal and Chubb "wrongfully secured or passively received a benefit from Plaintiff, by refusing to honor the *Insurance Proposal* and the *Policy*." Dkt. 1 ¶ 73. A party may recover under the unjust enrichment theory "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

As a matter of law, Plaintiffs do not state an unjust enrichment claim against Federal because such a claim is "unavailable when a valid, express contract governing the subject matter of the dispute exists," as it does here. *Matter of KP Eng'g, L.P.*, 63 F.4th 452, 457 (5th Cir. 2023) (quoting *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001)). Their unjust enrichment claim against Chubb fails because Plaintiffs have not shown that Chubb benefited from them by "fraud, duress, or the taking of an undue advantage." *Heldenfels*, 832 S.W.2d at 41.

### H.  Conclusion as to Federal and Chubb's Motion to Dismiss

For all of these reasons, the Court recommends that Federal and Chubb's Motion to Dismiss should be granted.

###### IV.     Gallagher's Motions to Dismiss

Gallagher argues that Plaintiffs' claims must be dismissed because they are time-barred. Alternatively, Gallagher contends that Plaintiffs fail to allege a plausible claim for relief.

### A.  Statute of Limitations

Gallagher has the burden of proof to prove that the statute of limitations bars Plaintiffs' claims. *F.T.C. v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 322 (5th Cir. 2004). ("A statute of limitations defense is an affirmative defense. An affirmative defense places the burden of proof on the party pleading it."). Under Texas law, Plaintiffs' claims for breach of good faith and fair dealing (statutory and common law), negligence, and unjust enrichment are subject to a two-year statute of limitations. *See Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 590 (Tex. 2017) (negligence); *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007) (unjust enrichment); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003) (misrepresentation, breach of the duty of good faith and fair dealing, and violations of Texas Insurance Code and DTPA).

Gallagher argues that all of Plaintiffs' claims against it are barred by these two-year statutes of limitations[4] because Plaintiffs were aware of the events giving rise to their claims before March 9, 2020, but did not file suit until October 31, 2022. Plaintiffs do not dispute that the statute of limitations is two years for most of their claims, but argue that their claims are not time-barred because Gallagher entered into an agreement to toll the statutes of limitations until October 31, 2022. *See* Dkt. 10-1 at 2 ("It is agreed that the running of any Limitations Period shall be tolled and suspended and shall not run as to any Claim for which the Limitations Period was still running

---

[4] Although Gallagher asserts that Plaintiffs' fraudulent inducement claim also is subject to a two-year statute of limitations, Dkt. 5 at 6, the statute of limitations for fraud and fraudulent inducement is four years. *See* TEX. CIV. PRAC. & REM. CODE § 16.004; *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 56 (Tex. 2015).

or had not expired as of August 27, 2020, and such tolling or suspension shall continue through October 31, 2022, unless earlier terminated as set forth herein."). Gallagher does not dispute the validity of the tolling agreement. but argues that (1) the Court cannot consider it because Plaintiffs failed to mention the agreement in their Complaint, and (2) it is irrelevant because "Plaintiffs' Complaint made no mention of any dates" so "the Court cannot ascertain what, if any, claims were tolled by the agreement." Dkt. 12 at 8-9.

While the eight-corners rule generally prohibits consideration of extrinsic evidence to determine a duty to defend, a court may consider such evidence if it "(1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved." *Monroe*, 640 S.W.3d at 203. Because the existence of a tolling agreement between the parties is consistent with the pleadings and Gallagher does not contest the agreement's validity, the Court considers the tolling agreement in deciding this motion. *See Doane v. Benefytt Techs., Inc.*, No. 22-10510-FDS, 2023 WL 2465628, at *4 n.5 (D. Mass. Mar. 10, 2023) (considering tolling agreement in analyzing motion to dismiss when the parties did not contest its authenticity); *U.S. Commodity Futures Trading Comm'n v. Coleman Tunney & Assocs., P.C.*, No. 13 CV 2919, 2013 WL 4565690, at *2 (N.D. Ill. Aug. 21, 2013) (considering tolling agreement not inconsistent with pleadings).

Considering Plaintiffs' allegations in the Complaint, the parties' arguments, and the tolling agreement, the Court finds that Gallagher has not sustained its burden to show that the two-year statute of limitations bars Plaintiffs' claims. Under the federal pleading requirements, "a plaintiff is not required to allege that his claims were filed within the applicable statute of limitations." *Frame v. City of Arlington*, 657 F.3d 215, 239-40 (5th Cir. 2011) (denying motion to dismiss where residents' complaint did not show that their claims were barred by Texas' two-year statute of limitations); *United States v. Aniemeka*, No. 17-CV-4011, 2021 WL 949344, at *4 (N.D. Ill.

Mar. 12, 2021) (rejecting motion to dismiss on statute of limitations grounds that would have required plaintiff to allege facts "to proactively defeat an affirmative defense"). Gallagher does not show that Plaintiffs' allegations "affirmatively demonstrate that the claims are barred by the statute of limitations and fail to raise some basis for tolling." *Frame*, 657 F.3d at 240; *see also Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.").

### B. Breach of Duty of Good Faith and Fair Dealing

Plaintiffs allege that Gallagher breached its duty of good faith and fair dealing "by failing or refusing to abide by the terms, conditions, representations, warranties, and duties in the *Policy*." Dkt. 9 at 16. Plaintiffs contend Gallagher "had a duty to procure the requested and proper insurance as requested and needed by Plaintiff Twin Village, and failed or refused to do so according to the denial of coverage by the Defendants Federal and Chubb." *Id.* But under Texas law, "an insurer's duty of good faith and fair dealing does not extend to insurance brokers who are not contracting parties with the insured.'" *SCHST, Inc. v. Arthur J. Gallagher & Co.*, No. 4:21-CV-02935, 2022 WL 4022054, at *7 (S.D. Tex. Aug. 23, 2022) (cleaned up), *R. & R. adopted*, 2022 WL 4588589 (S.D. Tex. Sept. 28, 2022).

The Texas Supreme Court has held that insurance agents who are not parties to the insurance contract or in privity with the insured do not owe a duty of good faith and fair dealing to the insured. *Lowe v. Whitehead Cargo Consultants LLC*, No. 4:09-CV-3570, 2011 WL 221871, at *3 (S.D. Tex. Jan. 20, 2011) (citing *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697-98 (Tex. 1994)). "Since insurance agents and brokers are not contracting parties with the insured, there is no 'special relationship' giving rise to a duty of good faith and fair dealing." *Id.* (citing *Natividad*, 875 S.W.2d at 698).

Because Plaintiffs allege that Gallagher breached its duties and obligations under the Policy but Gallagher was not a party to the Policy, the Court recommends that Plaintiffs' claim for breach of duty of good faith and fair dealing be dismissed. *See SCHST*, 2022 WL 4022054, at *7 (dismissing breach of duty of good faith and fair dealing claim against insurance broker when plaintiff failed to plead facts showing he was a party to the insurance policy); *GuideOne Mut. Ins. Co. v. Boenker*, No. 2:18-CV-00140-D-BR, 2019 WL 9103419, at *3 (N.D. Tex. May 28, 2019) (same), *R. & R. adopted sub nom. GuideOne Mut. Ins. Co. v. First United Methodist Church of Hereford*, 2019 WL 9103417 (N.D. Tex. Oct. 3, 2019).

### C. Statutory Bad Faith

Next, Plaintiffs allege that Gallagher made material misrepresentations to them about the terms of the Policy; violated its duty of good faith and fair dealing to abide by the terms of the Insurance Proposal and Policy; and failed to obtain adequate coverage, in violation of the DTPA, Texas Business & Commerce Code Section 17.46, and Texas Insurance Code Sections 541.051 and 541.060.

Texas courts recognize a cause of action under the DTPA and Texas Insurance Code against an insurance agent or broker who engages in unfair or deceptive acts. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999). But liability is imposed "only when the agent misrepresents specific policy terms prior to a loss, and the insured's reliance upon that misrepresentation actually causes the insured to incur damages." *Boenker*, 2019 WL 9103419, at *4.

Plaintiffs do not allege what terms in the Proposal or Policy Gallagher misrepresented; nor do they show that Gallagher made any false representations about the Policy. In their Complaint, Plaintiffs merely recite statutory provisions, then allege that Gallagher violated them. "These legal conclusions and boilerplate recitations of statutory language are insufficient to state a claim under either the DTPA or the Insurance Code." *Boenker*, 2019 WL 9103419, at *4.

### D.  Fraud and Fraudulent Inducement

Plaintiffs allege that Gallagher's "acts and omissions, in concert with the other named Defendants, constitute Defendants' fraud and fraudulent inducement." Dkt. 9 at 12. They allege that "Defendants misrepresented the Insurance Proposal and Policy by making untrue statements of material fact," *id.*, but do not specify what Gallagher said and how it misrepresented the Policy. Therefore, Plaintiffs do not state a plausible fraud or fraudulent inducement claim against Gallagher. *See JPMorgan*, 546 S.W.3d at 653 (stating that plaintiff must show defendant made a material representation that was false to support a fraud claim); *Thomas*, 218 F. Supp. 3d at 519 (dismissing fraud claim where the policy did not cover the insurance claim and therefore defendant did not make a misrepresentation about the policy).

### E.  Negligence and Unjust Enrichment

Plaintiffs also contend that Gallagher was negligent by breaching its duty to "broker and procure the insurance products requested, sought, and agreed upon by Plaintiff" and "to properly and accurate[ly]" represent the terms of the Policy being brokered, including "the presentation of the *Insurance Proposal*, the *Policy*, and the defense and indemnity of the Policy (including through the *Defense Costs*)." Dkt. 9 at 14.

A cause of action for negligence in Texas requires three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). Plaintiffs' negligence claim lacks the second element. They do not plausibly allege that Gallagher breached any duty because they show neither that the Policy covered their claims nor that Gallagher misrepresented any terms under the Policy. *Love*, 92 S.W.3d at 454.

Plaintiffs' unjust enrichment claim fails for similar reasons. Plaintiffs allege no facts showing that Gallagher benefited from them by "fraud, duress, or the taking of unfair advantage." *Heldenfels*, 832 S.W.2d at 41. The Court recommends these claims be dismissed.

### F.  Conclusion as to Gallagher's Motions to Dismiss

For all of these reasons, the Court finds that Plaintiffs fail to allege a plausible claim for relief against Gallagher and recommends that the District Court grant Gallagher's Motions to Dismiss.

## V.    Request for Leave to Amend

In their Responses, Plaintiffs request "the opportunity to amend" their pleadings if the Court finds any of Defendants' assertions meritorious. Dkt. 9 at 17; Dkt. 10 at 17; Dkt. 14 at 17. Courts should freely grant leave to amend when justice so requires. FED. R. CIV. P. 15(a)(2). Courts should deny leave to amend when amendment would cause undue delay or undue prejudice to the opposing party, or the amendment would be futile or in bad faith. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). Amendment is futile where it "would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).

Plaintiffs offer no other facts they would plead to cure the deficiencies in their Complaint. Without proposed amendments, the Court cannot assess whether amendment is warranted. *See Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (holding that leave to amend is not required where movant fails to inform court of facts movant would plead in amended complaint to cure any deficiencies). Plaintiffs have had several opportunities in their response briefs to show that their claims are covered under the Policy and have failed to do so. Accordingly, the Court recommends that their request for leave to amend should be denied as futile.

## VI.    Recommendation

This Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Arthur J. Gallagher & Co.'s Motion to Dismiss (Dkt. 5), Arthur J. Gallagher Risk Management Services, Inc.'s Motion to Dismiss (Dkt. 6), and Federal Insurance Company's and Chubb Defendants' Motion to Dismiss Plaintiffs' Original Complaint (Dkt. 13) and **DISMISS** Plaintiffs' lawsuit in its entirety.

The Court **FURTHER RECOMMENDS** that the District Court **DENY WITH PREJUDICE** Plaintiffs' request for leave to amend.

It is **FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Alan Albright.

## VII.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on June 19, 2023.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE